**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

EMILY WRIGHT, *et al.*,

*Plaintiffs*,

v.

CAPITAL ONE BANK (USA), N.A., *et al.*.

*Defendants*.

Civil Action No. 1:21-cv-803 (PTG/IDD)

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on the Motion to Dismiss ("Motion") filed by Defendants Capital One Bank (USA), N.A. and Capital One, N.A. Dkt. 82. Plaintiffs Emily Wright, Tiffany Wilson, Krishnendu Chakraborty, and Brittany Delacruz filed suit against Defendants on their own behalf and on behalf of several proposed classes, including a Proposed Nationwide Class and four State Classes (Massachusetts, North Carolina, Washington, and New Jersey). On August 22, 2023, Defendants filed the instant Motion, seeking dismissal of the Second Amended Complaint ("SAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Essentially, Defendants contend that (1) the Court lacks jurisdiction because Plaintiffs do not have standing; and (2) the SAC fails to state any claims as a matter of law. This matter was fully briefed. On November 2, 2023, the Court heard argument on the Motion.[1] For the reasons that follow, the Court finds that Plaintiffs have standing but that the SAC does fail to state any claims as a matter of law and thus grants Defendants' Motion.

[1] In addition, the Court granted Plaintiffs' Motion for Leave to File Supplemental Authority and reviewed said authority. Dkt. 93.

## I. Background

Plaintiffs Wright, Wilson, Chakraborty, and Delacruz have payment card accounts (credit, debit, and prepaid cards) with Defendants. The SAC asserts several claims: (1) breach of contract on behalf of all Plaintiffs and the Proposed Nationwide Class (Count I); (2) unjust enrichment/quasi-contract on behalf of all Plaintiffs, the Proposed Nationwide Class, and all State Classes; (3) breach of the implied covenant of good faith and fair dealing on behalf of all Plaintiffs and the Proposed Nationwide Class (Count III); and (4) violations of state consumer protection laws in Massachusetts, North Carolina, Washington, and New Jersey (Counts IV, V, VI, and VII, respectively). Plaintiffs seek certification of the action as a class and designation as class representatives, as well as declaratory and injunctive relief, nominal damages, disgorgement, and attorneys' fees and costs. Dkt. 80 at 55–56 ("SAC").

### *A. Exchange Rate Allegations and Related Contractual Provisions*

Plaintiffs' essential dispute concerns Defendants' practice of using exchange rates that Plaintiffs allege were fictional and violative of the parties' agreements ("Cardholder Agreements") and applying those exchange rates to Plaintiffs' foreign transactions. *Id.* ¶¶ 16–20. In particular, Plaintiffs allege that Visa and Mastercard ("the Processors") promulgated rules that required Defendants to apply foreign exchange ("FX") rates to cardholders' foreign transactions that were either (1) wholesale FX market rates or (2) government-mandated rates. *Id.* ¶ 6. Plaintiffs allege that Defendants incorporated the Processors' rules concerning FX rates into the Cardholder Agreements by reference when it stated:

> If you make a transaction in a foreign currency, the Payment Card Network will convert it into a U.S. dollar amount. The Payment Card Network will use its own currency conversion procedures. The conversion rate in effect on the processing date may differ from the rate in effect on the transaction date that appears on your Statement. We do not adjust the currency exchange rate or charge any currency conversion fees.

*Id.* ¶ 117; *see also id.* ¶ 9.

More than promulgating FX rate rules, Plaintiffs allege that the Processors act as Defendants' agents by selecting the FX rates to be charged, because under "the Processor Rules, and the Cardholder Agreements, Visa and Mastercard assent to select FX rate[s] – on behalf, of, and to be authorized and charged by, Capital One – that are either wholesale market rates or government-mandated rates." *Id.* ¶ 127. By then billing Plaintiffs according to the Processors' chosen rates, Defendants allegedly consented to the Processors' decisions and therefore, to the Processors acting as Defendants' agents.[2] *Id.* ¶ 151. Plaintiffs also allege that Defendants are independently liable for their own conduct in ratifying the Processors' rates. *Id.* ¶ 154.

Plaintiffs alleges that rather than apply FX rates to Plaintiffs' foreign transactions that reflect the terms of the Processors' rules, Defendants charge Plaintiffs fictional rates. *Id.* ¶¶ 14, 18. Specifically, Plaintiffs allege that Defendants charge Plaintiffs "fictional" rates selected by the Processors that are "not from a single moment in time in the wholesale currency market." *Id.* ¶ 18. These off-market rates create a "fictional bid-ask spread[.]" *Id.* The bid is the rate that Defendants and the Processors use to convert currency in one direction. *Id.* ¶ 17. The ask is the conversion rate that Defendants and Processors use in the other direction. *Id.* The fictional bid-ask spread, thus, is the spread between rates that occur at different points in time. *Id.* ¶ 18.

Plaintiffs allege that the Cardholder Agreements only authorize Defendants to charge rates that existed in the wholesale market on the applicable date. *Id.* ¶ 23. Charging off-market rates is therefore allegedly violative of both the Agreements and the rules between Defendants and the Processors and is unjust, unfair, deceptive, and fraudulent. *Id.* ¶¶ 23, 108, 122, 126. Plaintiffs

---

[2] Plaintiffs allege that the contractual language governing the relationship between (1) Defendants and Visa, and (2) Defendants and Mastercard, can be found at SAC ¶¶ 122, 126, respectively.

allege that Defendants adopted this practice because it inflates a transaction's overall value, which leads to higher card balances and higher interest payments on card balances. *Id.* ¶ 25.

### *B. Procedural History*

On July 9, 2021, Plaintiffs filed their first complaint against Defendants. Dkt. 1. On October 1, 2021, Defendants filed a motion to dismiss the original complaint. Dkt. 27. On August 31, 2022, Defendant's filed a motion to dismiss for lack of subject matter jurisdiction. Dkt. 55. Thereafter, the Court entered the parties' stipulation for Plaintiffs to file a First Amended Complaint, set a briefing schedule, and denied the pending motions to dismiss as moot. Dkt. 64. On October 6, 2022, Plaintiffs filed their First Amended Complaint. Dkt. 65. On November 1, 2022, Defendants filed a motion to dismiss the First Amended Complaint. Dkt. 66. On December 14, 2022, Plaintiffs filed an opposition to Defendants' motion and a motion to amend the first amended complaint. Dkts. 73, 74. On February 14, 2023, the case was reassigned to the undersigned. Plaintiffs' motion to amend was subsequently granted. Dkt. 79. On July 31, 2023, Plaintiffs filed the operative SAC, which is the subject of the instant motion.

## II. Legal Standard

The Court shall dismiss an action under Federal Rule of Civil Procedure 12(b)(1) if it concludes that it lacks subject matter jurisdiction to decide the case and the underlying facts are not in dispute. *Puryear v. County of Roanoke*, 214 F.3d 514, 517 (4th Cir. 2000). "Article III of the Constitution requires a litigant to possess standing . . . for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 557). When reviewing a 12(b)(6) motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

## III. Analysis

### *A. Plaintiffs' Standing*

To possess Article III standing, a plaintiff must establish: "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions; and (3) a likelihood that the injury will be redressed by a favorable decision." *Ali*, 26 F.4th at 596 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Moreover, in the class-action context, "most jurisdictions, and some courts in the Fourth Circuit, have adopted the class-certification approach, under which 'an action [may] proceed once the named plaintiff demonstrates her individual standing to bring a claim.'" *Guerrero v. Bank of Am. N.A.*, 2023 WL 2712484, at *4 (W.D.N.C. Mar. 30, 2023) (alteration in original) (quoting *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 319 (D. Md. 2021)). This Court will take a similar approach. In this case, the Court finds that Plaintiffs have sufficiently alleged injury-in-fact, traceability, and redressability to establish they have standing.

*i. Injury-in-Fact*

An injury-in-fact must be "concrete and particularized[,]" meaning that the injury alleged "must affect the plaintiff in a personal and individual way" and "must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In the context of a class action, "we analyze standing based on the allegations of personal injury made by the named plaintiffs." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018)). "[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing[.]" *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972).

Plaintiffs' allegations describing financial injury are more substantial than allegations in recent and similar cases where standing was found. *See, e.g.*, *Guerrero*, 2023 WL 2712484, at *4 n.3 (finding standing where "the named plaintiffs sufficiently allege that they suffered financial harms because of the bank's purportedly inflated charges"); *compare with Wilson v. Mastercard, Inc.*, 2022 WL 3159305, at *4 (S.D.N.Y. Aug. 8, 2022) (finding that the plaintiff did not sufficiently allege injury-in-fact against Mastercard where she alleged only a single transaction that included an off-market exchange rate and, according to the court, "offer[ed] no details to support her conclusory assertion that the currency conversion rate was higher than the applicable wholesale rate").

In their SAC, each named Plaintiff identifies at least one transaction that they allege included off-market FX rates. SAC ¶¶ 40–47 (including one transaction as to Plaintiff Emily Wright); *id.* ¶¶ 53–64 (including four transactions as to Plaintiff Brittany Delacruz); *id.* ¶¶ 74–80 (including one transaction as to Plaintiff Krishnendu Chakraborty); *id.* ¶¶ 85–90 (including one transaction as to Plaintiff Tiffany Wilson). For each transaction, each named Plaintiff also alleges

sufficient publicly available information to plausibly infer at this stage that Defendants charged off-market FX rates. *Id.* ¶¶ 40–47, 74–80, 85–90. The Court therefore concludes that Plaintiffs have alleged sufficient details to plausibly show that Defendants' alleged practice of charging off-market and inflated FX rates caused Plaintiffs particularized and concrete injury in the form of financial harm.

*ii. Traceability*

As to traceability, "the 'fairly traceable standard is not equivalent to a requirement of tort causation.'" *Hutton*, 892 F.3d at 623 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000)). Traceability may be satisfied if Plaintiffs sufficiently allege that Defendants' conduct was a plausible source of the injury Plaintiffs allegedly suffered. *Id.* "While the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the 'independent action of some third party not before the court.'" *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (quoting *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018)).

While Plaintiffs' claims necessarily involve the third-party Processors' actions, Plaintiffs allege that Defendants ratified the Processors' conduct by issuing and collecting on bills to Plaintiffs and that such conduct by Defendants injured Plaintiffs. SAC ¶¶ 154–55. Therefore, at this stage, Plaintiffs sufficiently allege that Defendants' ratification caused their injuries, as such allegations plausibly place Defendants' conduct within the causal chain. This means that Plaintiffs have sufficiently alleged traceability.

*iii. Redressability*

Finally, to establish redressability, a plaintiff "must only 'show that [he] personally would benefit in a tangible way from the court's intervention.' To that end, '[t]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability.'" *Disability Rts. S.C.*, 24 F.4th at 903 (alteration in original) (quoting *Deal v. Mercer Cnty. Bd. Of Educ.*, 911 F.3d 183, 189–90 (4th Cir. 2018)).

Plaintiffs allege that they were "overcharged by *Defendants* and seek damages and redress from *Defendants* for those overcharges in the form of damages." Dkt. 86 at 9 (emphasis in original) (citing SAC ¶¶ 47, 58, 63, 68, 79, 92, 133, 148). Plaintiffs have met their "not onerous" burden of showing that the relief they seek against Defendants may be redressed by this Court through the damages, injunctive relief, and other traditional remedies that Plaintiffs request. *Deal*, 911 F.3d at 189. Thus, as to standing generally, the named Plaintiffs sufficiently allege that they have suffered injury-in-fact in the form of financial harm after the Processors and Defendants passed purportedly inflated charges onto Plaintiffs. These allegations are sufficient to survive dismissal for lack of standing under Rule 12(b)(1).

***B. Breach of Contract (Count I)***

The Court now turns to the merits of Plaintiffs' breach of contract claim under Rule 12(b)(6). "Under Virginia law, a cause of action for breach of contract requires 'the existence of a duly executed and enforceable agreement; performance or offers to perform by plaintiffs; that defendants failed to perform; that the breaches caused actual damages; and that those damages are recoverable under Virginia law.'" *Rossman v. Lazarus*, 2008 WL 4181195, at *8 (E.D. Va. Sept.

3, 2008) (quoting *Johnson v. D & D Home Loans Corp.*, 2008 WL 851083, at *6–7 (E.D. Va. Jan. 23, 2008)).[3]

"When the terms of a contract are 'clear and unambiguous,' courts are required to construe those terms 'according to their plain meaning.'" *Dress v. Cap. One Bank (USA), N.A.*, 2019 WL 3451304, at *4 (E.D. Va. July 30, 2019) (quoting *Golding v. Floyd*, 539 S.Ed.2d 735, 736 (Va. 2001)), *aff'd*, 849 F. App'x 55 (4th Cir. 2021). A contract must be sufficiently definite to obligate a party to another, such that a court can "give the contract an exact meaning[.]" *Dodge v. Trs. Of Randolph-Macon Woman's Coll.*, 661 S.E.2d 801, 802 (Va. 2008) (explaining that "[t]he terms must be clear, definite, and explicit"). At this stage, Plaintiffs must at least identify a contractual provision that has been allegedly breached. *Id.*

Plaintiffs argue that a contractual provision in the Cardholder Agreements, which states that the Processors will "use [their] own currency conversion procedures[,]" required Defendants to impose either (1) a wholesale FX market rate or (2) a government-mandated rate. SAC ¶¶ 116–17. Construing the terms according to their plain meaning, the language does not identify Defendants' specific promise concerning the rates that will ultimately be charged to their

---

[3] Virginia substantive law applies to the contractual claims here because, as Plaintiffs claim, the Cardholder Agreements contain a clause selecting Virginia law. Dkt. 86 at 10 n.4. Defendants do not contest that assertion. The SAC includes a hyperlink to the Cardholder Agreements, SAC at 29 n.13, which the Court may consider as a document incorporated into the complaint by reference. *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021). The Cardholder Agreement states that the Agreement is governed by applicable federal and Virginia law. *Credit Card Agreement for Consumer Cards in Capital One, N.A.*, https://ecm.capitalone.com/WCM/card/credit-card-agreement-for-consumer-cards-in-capital-one-bank-usa-na.pdf (last visited Mar. 4, 2024), at 7 [hereinafter "Cardholder Agreements"].

The Court will therefore apply Virginia law as required under diversity jurisdiction. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("Federal courts, when exercising their diversity . . . jurisdiction over state law claims, must of course, apply the choice of law rules applicable in the forum state."), *aff'd mem. on reh'g*, 742 F.2d 170 (4th Cir. 1984); *Hengle v. Treppa*, 19 F.4th 324, 349 (4th Cir. 2021) ("Under Virginia law, parties to a contract are free to specify the law that governs their agreement.").

cardholders. Moreover, the language fails to identify the specific procedures or rules that the Processors will use to set rates. In *Guerrero*, for example, the court found that the defendant had agreed to a contractual duty to its cardholders because the parties' agreements explicitly promised that Visa or Mastercard would apply either a wholesale market rate or a government-mandated rate. *Guerrero*, 2023 WL 2712484, at *4 (quoting the agreements, which specified that "the currency conversion rate to be used is either (1) a wholesale market rate or (2) a government-mandated rate"). Here, Plaintiffs cannot point to contractual language that is similarly clear and unambiguous as to the rates that Defendants will charge their cardholders. The Court is not persuaded that Plaintiffs have sufficiently alleged a contractual duty that Defendants have failed to perform. Therefore, because Plaintiffs cannot identify the existence of Defendants' duty, Plaintiffs cannot plausibly allege a breach.

In addition, Plaintiffs allege that the Processors' rules are incorporated by reference and therefore Defendants have imported the duties outlined in the Processors' rules. SAC ¶ 9. "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, 514 F. App'x 365, 367–68 (4th Cir. 2013) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)).[4] To satisfy the incorporation standard for sufficiently clear language, a provision may state that "all terms & conditions on the

[4] Because the Supreme Court of Virginia has not yet articulated requirements for incorporation by reference, this Court "must predict how that court would rule" by applying common law principles. *Rsrv. at Winchester I, LLC v. R 150 SPE, LLC*, 2022 WL 358500, at *13 (W.D. Va. Feb. 7, 2022) (citing *Logan*, 514 F. App'x at 367–69 ("attributing common law requirements for incorporation by reference to West Virginia law where the West Virginia Supreme Court had never addressed the issue")).

following pages" apply, for example. *Id.* at 369. Here, the Cardholder Agreements' bare reference to the Processors "own currency conversion procedures" is not clear enough for the Court or cardholders to ascertain the specific documents the Agreements purportedly incorporate. SAC ¶ 117. The Court therefore finds that that the Cardholder Agreements do not plausibly incorporate by reference the Processors' rules. Accordingly, the Court will not consider the language of the Processors' rules that Plaintiffs attached to their SAC.

Plaintiffs also claim that the Processors acted as Defendants' agents. *Id.* ¶ 119. Under Virginia law, an agency relationship is a "fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 249 (Va. 2002) (quoting *Reistroffer v. Person*, 439 S.E.2d 376, 378 (Va. 1994)). Such a relationship may be inferred based on the parties' conduct. *Id.* Alleging one party's "general control in a vacuum[,]" however, is insufficient. *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)).

Plaintiffs' cited contractual language explicitly acknowledges that Processors will use their "own" procedures. SAC ¶ 117. Nowhere do Plaintiffs plausibly allege that the rates are subject to Defendants' control. In fact, the contract clearly states that Defendants "do not adjust the currency exchange rate or charge any currency conversion fees." *Id.* It is not enough, either, for Plaintiffs to allege that Defendants exercise "general control" because they ratify the Processors' imposed rates by passing on the rates to cardholders through bills. *Aaronson*, 2019 WL 8953349, at *3; *see* SAC ¶ 130 (alleging that Defendants "ratified" the FX rates selected by the Processors). Alleging that the Processors were Defendants' agents or that Defendants had the ultimate right to

control the rates is insufficient and conclusory, as Plaintiffs "must allege *some* facts regarding the relationship between an alleged principal and agent[.]" *Aaronson*, 2019 WL 8953349, at *3 (citation omitted). The Court therefore finds that Plaintiffs have failed to plausibly allege that the Processors acted as Defendants' agents.

Thus, Plaintiffs have failed to plausibly allege facts sufficient to state that Defendants breached a contractual duty owed to Plaintiffs through Defendants' own conduct or the Processors' conduct. Plaintiffs have failed to plausibly allege that Defendants owed Plaintiffs a contractual duty to charge either wholesale market rates or government-mandated rates or that Defendants ultimately retained control over the Processors' imposed rates. Therefore, the Court grants Defendants' Motion as to the breach of contract claim (Count I) for failure to state a claim for relief.

### *C. Unjust Enrichment/Quasi-Contract (Count II)*

The Court turns to Plaintiffs' unjust enrichment claim, which they allege in Count II in the alternative to their breach of contract claim as alleged in Count I. "An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract." *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988). Accordingly, the district court should dismiss a claim for unjust enrichment when the parties have an express written contract. *Run Them Sweet, LLC v. CPA Global, Ltd.*, 224 F.Supp.3d 462, 469 (E.D. Va. 2016) (dismissing unjust enrichment claim where parties "unquestionably have an express contract.") (citing *Kern v. Freed Co., Inc.*, 224 Va. 678, 679–81 (1983)); *USI Insurance Services, LLC v. Ellis*, 2023 WL 2244677 *4 (E.D. Va. Feb. 27, 2023) (holding that plaintiff failed to state a claim for unjust enrichment given that there was an express contract at the heart of the dispute).

Here, while Defendants contest that the Cardholder Agreements create the specific obligation that Plaintiffs allege, neither party disputes the Agreements' validity or enforceability. *See* Dkt. 83 at 10–11. Given that there is an express contract between the parties, Plaintiffs may not raise an unjust enrichment claim in the alternative when there is no question about the validity or enforceability of the underlying agreement. Therefore, the Court grants Defendants' Motion as to Plaintiffs' unjust enrichment claim (Count II) and dismisses the claim for failure to state a claim for relief.

***D. Breach of Implied Covenant of Good Faith and Fair Dealing (Count III)***

Next, the Court turns to Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing. Plaintiff asserts this claim as a standalone claim. Specifically, Count III of the SAC alleges that "Capital One's Cardholder Agreements created the objectively justified expectation that the rates applied for foreign currency exchange would bear some resemblance to rates actually paid by Capital One and/or the Processors[.]" SAC ¶ 171. It then alleges that Capital One "breached its duties of good faith and fair dealing in the performance and execution of its contracts with Plaintiffs and members of the Nationwide Class." *Id.* at ¶ 175.

Under Virginia law, such a claim "must be brought as part of a claim for breach of contract, not as an independent tort claim." *GW Acquisition Co. v. Pageland Liab. Co.*, 2023 WL 125018, at *15 (E.D. Va. Jan. 6, 2023) (finding that a breach of implied covenant claim must be dismissed if it was alleged independently of a breach of contract claim). When such a claim is brought as part of a claim for breach of contract, "[t]he implied covenant of good faith and fair dealing prohibits a party with valid contractual rights from exercising such rights in bad faith." *Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 455 (E.D. Va. 2014).

Thus, to the extent that Plaintiffs' claim is independent from the breach of contract claim, it must fail because it cannot stand apart from a breach of contract claim. *See, e.g.*, *GW Acquisition Co.*, 2023 WL 125018, at *15. And because Plaintiffs have failed to plausibly allege a contractual provision that creates a relevant duty, as discussed above, Plaintiffs' claim of breach of implied covenant must fail to the extent that Plaintiffs' claim is part of their breach of contract claim. *See Morrison*, 30 F. Supp. 3d at 455–56 (dismissing such a claim where the plaintiff had failed to allege that the defendant had exercised the express contractual right at issue). If Plaintiffs cannot plausibly identify the duty Defendants owed to them that would give rise to a breach of contract claim, Plaintiffs cannot then allege that Defendants exercised that duty in bad faith.

A claim of breach of the implied covenant of good faith and fair dealing cannot save a breach of contract claim through "conclusory allegations" that Defendants "acted dishonestly or in bad faith," *GW Acquisition Co.*, 2023 WL 125018, at *15 (dismissing a claim of breach of implied duty of good faith and fair dealing because the claim lacked sufficient factual allegations to plausibly allege that a party acted dishonestly or in bad faith). In their SAC, Plaintiffs offer only conclusory support for their claim of breach of the implied covenant of good faith and fair dealing by alleging that Defendants charged Plaintiffs FX rates "in bad faith" and restating the same factual allegations as those underlying their breach of contract claim. SAC ¶ 175. Plaintiffs attempt to amend their claim by arguing in their Opposition that Defendants' conduct is "arbitrary and unfair." Dkt. 86 at 22. But Plaintiffs cannot amend their SAC through subsequent briefing. *See, e.g.*, *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). The Court therefore grants Defendants' Motion as to Plaintiffs' claim of breach of the implied covenant.

### *E. State Consumer Protection Laws (Counts IV–VII)*

Finally, the Court considers the state consumer protection laws raised by Plaintiffs. As to each state statutory claim, Plaintiffs allege that Defendants engaged in unfair or deceptive acts or practices. SAC ¶ 178 (as to Massachusetts); *id.* ¶ 191 (as to North Carolina); *id.* ¶ 207 (as to Washington); *id.* ¶ 218 (as to New Jersey).

Defendants are correct that under the state statutes cited by Plaintiffs, alleging a breach of contract claim alone is not enough to state a successful claim of an unfair or deceptive trade practice. Dkt. 83 at 27 n.9 (citing *ABC Soils, Inc. v. DRS Power Tech., Inc.*, 386 F. Supp. 3d 107, 111 (D. Mass. 2019) (as to Massachusetts); *CS Tech., Inc. v. Horizon River Techs., LLC*, 2020 WL 4546436, at *9 (W.D.N.C. Aug. 6, 2020) (as to North Carolina); *Whitman v. State Farm Ins. Co.*, 2022 WL 4081916, at *7 (W.D. Wash. Sept. 6, 2022) (as to Washington); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (as to New Jersey)). Rather, as to each state statutory claim, Plaintiffs must allege certain aggravating circumstances or factors.[5]

Plaintiffs claim that "they allege that Capital One made false representations about its FX rate procedures at contract formation, thereby breaking a promise which it never intended to perform[.]" Dkt. 86 at 29 (citing SAC ¶¶ 198–99). In support, however, Plaintiffs only cite the

---

[5] *See ABC Soils, Inc.*, 386 F. Supp. at 111 (recognizing that in Massachusetts, "[f]or a breach of contract to rise to the level of a . . . claim [of unfair or deceptive practices], the breach 'must be both knowing and intended to secure "unbargained-for benefits" to the detriment of the other party'" (quoting *Zabin v. Picciotto*, 896 N.E.2d 937, 963 (Mass. 2008))); *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (recognizing that in North Carolina, "[t]he type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements"); *Huong Hoang v. Amazon.com, Inc.*, 2012 WL 1088165, at *6 (W.D. Wash. Mar. 30, 2012) (recognizing that in Washington, the court considers whether "the alleged acts are committed in the course of the defendant's business, . . . the acts are part of a pattern, . . . repeated acts were committed prior to the act involving the plaintiff, and . . . there is a real and substantial potential for repetition of the defendant's conduct"); *Cox*, 647 A.2d at 462 (recognizing that in New Jersey, "the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach").

Cardholder Agreements' contractual language or state legal conclusions as to Defendants' intent. *See* SAC ¶¶ 198–99. The Court is not bound to accept such conclusory statements as true. *Iqbal*, 556 U.S. at 678. Even so, such statements merely restate Plaintiffs' bases for their breach of contract claims. The Court thus finds that as to each statutory claim, Plaintiffs fail to plausibly allege any facts that may transform their breach of contract claims into state consumer protection claims. Therefore, the Court grants Defendants' Motion as to all state consumer protection claims (Counts IV through VII).

## IV. Conclusion

For these reasons, the Court grants Defendants' Motion to Dismiss as the Court finds that Plaintiffs fail to state a claim upon which relief may be granted.

Accordingly, it is hereby

**ORDERED** that Defendants' Motion (Dkt. 82) is **GRANTED** and all claims are hereby **DISMISSED**.

The Clerk is directed to close this matter.

/s/
Patricia Tolliver Giles
United States District Judge

Entered this 4th day of March, 2024.
Alexandria, Virginia